# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
          **Plaintiff,**

    **v.**                             **Case No. 05-CR-200**

**CHRISTOPHER M. MOSES**
          **Defendant.**

---

## SENTENCING MEMORANDUM

On April 19, 2005, law enforcement officers executed a search warrant for the home of defendant Christopher Moses, seizing, <u>inter alia</u>, firearms, two kevlar ballistics vests, nearly 1000 rounds of ammunition, and five 40 mm military-style grenades. Because defendant was a convicted felon, the government charged him with possessing firearms as a felon contrary to 18 U.S.C. § 922(g) (count one) and possession of body armor as a violent felon contrary to 18 U.S.C. § 931(a)(1) (count two). Because the 40 mm grenades were not registered to defendant in the National Firearms Registration and Transfer Record, the government charged him with unlawful possession of unregistered destructive devices contrary to 26 U.S.C. § 5861(d) (counts three-seven).

Defendant filed a motion to suppress the contraband seized from his house and requested that the government grant immunity to his live-in girlfriend, Christine Stoffel, for purposes of her testimony at the suppression hearing.[1] The government declined, causing

---

[1]The key issue on the motion to suppress was whether Stoffel had consented to a limited search of her belongings inside the house, the results of which were used to obtain the search warrant for the house. Stoffel invoked her Fifth Amendment privilege and declined to testify at the suppression hearing absent a grant of immunity.

defendant to file a motion to compel immunity and/or dismiss the indictment. Defendant further moved to dismiss count one on equal protection and counts three-seven on multiplicity grounds.[2] I denied all of the motions, and the case proceeded to trial. The government dismissed count two shortly before trial and the case was submitted to a jury on the remaining counts. The jury found defendant guilty on all charges.

The probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing, setting defendant's offense level at 28 (base level 22, U.S.S.G. § 2K2.1(a)(3),[3] plus 2 based on the number of firearms possessed, § 2K2.1(b)(1)(A), plus 2 for possession of a destructive device, § 2K2.1(b)(3)(B), plus 2 because some of the firearms had obliterated serial numbers and/or were stolen, § 2K2.1(b)(4)) and his criminal history category at IV, producing an imprisonment range of 110-137 months under the sentencing guidelines. Defendant objected to various portions of the PSR, moved for departure on several grounds, requested a non-guideline sentence under 18 U.S.C. § 3553(a), and moved for continuation of bail pending appeal. The government opposed defendant's PSR objections, departure motions and request for release pending appeal. In this memorandum, I set forth my resolution of the contested issues and provide the reasons for the sentence imposed.

---

[2]The equal protection argument was based on the fact that the felon in possession statute exempts some felons from the bar on weapon possession but not others. The multiplicity argument was based on the filing of a separate count for each destructive device defendant possessed (counts three-seven). Defendant also moved to dismiss count two, arguing that he had not been convicted of a "crime of violence" under 18 U.S.C. § 931(a)(1).

[3]The PSR set the base level at 22 under § 2K2.1(a)(3) because defendant possessed firearms described in 26 U.S.C. § 5845(a) and had a previous conviction for a crime of violence, to wit, a 2002 fleeing conviction.

2

# I. SENTENCING PROCEDURE

I follow a three-step sentencing procedure in light of United States v. Booker, 543 U.S. 220 (2005). First, I determine the advisory guideline range, resolving any disputes necessary to that determination. Second, I decide whether to grant any departures pursuant to the Sentencing Commission's policy statements. Finally, I select a sentence that is sufficient but not greater than necessary given all of the factors set forth in 18 U.S.C. § 3553(a). E.g., United States v. Cull, 446 F. Supp. 2d 961, 962 (E.D. Wis. 2006).

# II. SENTENCING DISCUSSION

## A. Guideline Determinations

### 1. U.S.S.G. § 2K2.1(b)(3)(B) – Destructive Device Enhancement

Defendant first objected to the 2-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B) based on possession of destructive devices. He argued that imposition of the enhancement constituted double counting because his base offense level was already enhanced based on such possession under U.S.S.G. § 2K2.1(a)(3)(ii).[4] However, the argument was contrary to the relevant application note, which provides:

> A defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a) (e.g., subsection (a)(1), (a)(3), (a)(4)(B), or (a)(5)), and the applicable enhancement under subsection (b)(3). Such devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons.

---

[4]As indicated in n.3, supra, that guideline provides for a base level of 22 if the defendant possessed a "firearm" listed in 26 U.S.C. § 5845(a) and committed the instant offense subsequent to sustaining a felony conviction for a crime of violence. Section 5845(a) covers several weapons considered particularly dangerous, e.g. sawed-off shotguns and rifles, machine guns, and destructive devices such as grenades, bombs and rockets.

3

U.S.S.G. § 2K2.1 cmt. n.7 (2006).[5]  Therefore, the Commission has decided that when the § 5845 firearm is a destructive device, an additional enhancement is warranted.  Defendant made no argument that the application note was contrary to statute, or was inconsistent with or a plainly erroneous reading of the Guideline.  See Stinson v. United States, 508 U.S. 36, 38 (1993) (holding that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").  Therefore, I followed the note and overruled the objection.

Defendant also argued that his possession of destructive devices did not pose a significant risk, as he did not possess the machine gun necessary to fire the 40 mm grenades and the items were more like souvenirs from his days in the military.  This was not really a guideline argument but rather a departure or § 3553(a) argument, and I considered it as such in imposing sentence.  I did note, however, that the Commission's view is that when the possession of a destructive device does pose a significant risk, the court should consider an upward departure.  The Commission notes that:

> Offenses involving such devices cover a wide range of offense conduct and involve different degrees of risk to the public welfare depending on the type of destructive device involved and the location or manner in which that destructive device was possessed or transported.  For example, a pipe bomb in a populated train station creates a substantially greater risk to the public welfare, and a substantially greater risk of death or serious bodily injury, than an incendiary device in an isolated area.  In a case in which the cumulative result of the increased base offense level and the enhancement under subsection (b)(3) does not adequately capture the seriousness of the offense because of the type of destructive device involved, the risk to the public welfare, or the risk of death or serious bodily injury that the destructive device

---

[5]The PSR used the 2005 version of the guidelines, without objection.  The relevant application note was number 8 under the 2005 version.

4

created, an upward departure may be warranted.  See also §§ 5K2.1 (Death), 5K2.2 (Physical Injury), and 5K2.14 (Public Welfare).

U.S.S.G. § 2K2.1 cmt. n.7 (2006).  Therefore, I overruled the objection on this ground as well.

### 2.      Criminal History Points

Defendant's second objection was to the 3 criminal history points assigned to the larceny offense listed in ¶ 45 of the PSR.  Defendant admitted that the court sentenced him to five years in prison for that offense, as the PSR indicated, but stated that he only served about six or seven months of that term.  He argued that assigning 3 points to the offense thus overstated the seriousness of the conviction, which should be reduced to 2 points.

Defendant's argument was again contrary to the plain language of the guideline manual.  Application note 2 to U.S.S.G. § 4A1.2 provides that "criminal history points are based on the sentence pronounced, not the length of time actually served."  U.S.S.G. § 4A1.2 cmt. n.2.  Sentences exceeding one year and one month score 3 criminal history points.  U.S.S.G. § 4A1.1(a).  Thus, while I could consider defendant's argument as a departure request under U.S.S.G. § 4A1.3 and under 18 U.S.C. § 3553(a), it failed as a guideline objection.

### 3.      Hearsay Statements in PSR

Finally, defendant objected to consideration of hearsay statements from Christine Stoffel and Christopher Brady[6] in the PSR.  However, as defendant conceded, hearsay is admissible at sentencing.  See, e.g., United States v. Miller, 450 F.3d 270, 273-74 (7th Cir.), cert denied, 75 U.S.L.W. 3267 (U.S. Dec. 11, 2006).  Further, the court need not

_____

[6]Brady apparently also lived in the house with defendant and Stoffel.

5

require proof beyond a reasonable doubt at sentencing. See, e.g., United States v. Hale, 448 F.3d 971, 988-89 (7th Cir. 2006). Therefore, the fact that Stoffel and Brady did not testify at trial and were not subject to cross-examination did not bar consideration of their statements or violate defendant's due process rights.

Defendant also asked me to disregard Stoffel's statements as unreliable because of her alleged bias against him. I saw no such bias. According to the PSR, which defendant did not challenge factually, defendant and Stoffel continued to live together and apparently had an intimate relationship. Further, Stoffel's conduct throughout this case in refusing to testify seemed to me designed to favor defendant.[7] Finally, Stoffel's statements to the police about the weapons at issue (recounted in the PSR) struck me as true. As is relevant here, Stoffel told officers that all the guns and ammunition belonged to defendant. (PSR ¶ 18.) These statements did not lead to any specific guideline enhancements. They were, however, contrary to the defense theory at trial, which was the guns might belong to Stoffel or Brady (who also denied possession) rather than defendant. Given that Stoffel moved in with defendant just one month before the warrant was executed, while defendant had owned the home since 1996 (as sole owner since 2003), her statements made sense. Moreover, defendant presented absolutely no evidence refuting any of Stoffel's statements, which, under all the circumstances, I considered sufficiently reliable for purposes of sentencing.

Defendant further argued that his due process rights were violated by the imposition

---

[7]As I noted in my order denying the motion to dismiss based on the government's refusal to grant immunity, Stoffel's invocation of privilege, while perhaps not "fanciful," did seem unnecessary. She faced no significant risk of incrimination based on her testimony relevant to the suppression motion. (R. 46 at 12-13 n.6.)

6

of guideline enhancements not requiring proof beyond a reasonable doubt or proof of scienter. As he conceded, however, these positions are contrary to controlling Seventh Circuit precedent. See, e.g., United States v. Brazinskas, 458 F.3d 666, 669 (7th Cir. 2006). Therefore, I overruled the objection and adopted the PSR's factual statements as the court's findings of fact.

## B. Departure Requests

Defendant requested a guideline departure on two bases, but I found that his requests lacked merit.

### 1. U.S.S.G. § 5K2.0 & Koon

Defendant first argued for a departure under U.S.S.G. § 5K2.0 and Koon v. United States, 518 U.S. 81 (1996) based on the unusual and mitigated nature of the offenses. Specifically, defendant stated that the 40 mm grenades he possessed were stored in a military style ammunition box. He argued that the evidence showed them to be nothing more than souvenirs from his military service. While they might explode in a fire, he did not possess the machine gun needed to fire them. Nor was there evidence that he intended to transfer the grenades to others or use them for criminal activity. Regarding the firearms, he noted that aside from a handgun found under the mattress in the main bedroom, the firearms were scattered amongst other stuff in the residence. And again, there was no evidence linking the guns to other criminal activity. Defendant concluded that his possession was not similar to the usual felon in possession case.

Although I was authorized to depart on this basis, I declined to do so in the present case. Much of defendant's argument was devoted to noting the absence of certain

7

aggravating factors, such as transfer or use of the weapons. However, if defendant had engaged in such conduct, his guideline range would have been higher to account for it. See, e.g., U.S.S.G. § 2K2.1(b)(5). The absence of aggravating factors does not take the case outside the heartland. Further, the application note quoted above cut against his argument on the grenades. The Commission seems to view the heartland case as one where the possession does not pose a substantial risk to the public, as the Commission recommended an upward departure when such factors were present. U.S.S.G. § 2K2.1 cmt. n.7. In sum, I could not conclude that this case fell outside the heartland of the guideline under § 5K2.0. I did, however, consider the specifics of the offense under § 3553(a).

### 2.    U.S.S.G. § 4A1.3

Defendant next requested a departure from his criminal history category under U.S.S.G. § 4A1.3. He argued that (1) he was penalized twice for his fleeing conviction because it scored criminal history points and elevated his base offense level under U.S.S.G. § 2K2.1(a)(3); (2) while his 1994 larceny conviction carried a five year sentence, he actually served just six or seven months; (3) his 1998 receiving stolen property conviction was also an older, non-violent offense; (4) his fleeing conviction occurred during the midst of a stressful divorce proceeding, and no one was hurt during his flight; and (5) he successfully completed probation on his 2003 disorderly conduct case. He asked me to depart from category IV to category III.

Section 4A1.3 provides for a horizontal departure where reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that he will commit other

8

crimes. U.S.S.G. § 4A1.3(b)(1). I have identified various relevant factors in ruling on such a motion, including the age of the prior offenses; the defendant's age at the time he committed them; whether the prior offenses were committed while the defendant was under the influence of drugs or alcohol; the circumstances of the defendant's prior convictions, i.e. whether they were petty or non-violent; the length of the prior sentences; what was going on in the defendant's life at the time he committed the prior offenses; and the closeness in time of the prior offenses, i.e. whether they were they part of one "spree." United States v. Eisinger, 321 F. Supp. 2d 997, 1006 (E.D. Wis. 2004).

While I was authorized to depart on this basis, I declined to do so in the present case. A review of defendant's record revealed that he had consistently been in trouble for the past thirteen years. He was convicted of larceny in 1993, possessing stolen property in 1994, larceny in 1994, receiving stolen property in 2001, fleeing in 2002, and disorderly conduct in 2003. He also received a deferred prosecution agreement related to a burglary case in 1992. Defendant's offenses were spread out over more than a decade, from when he was a very young man to the time of sentencing, when he was thirty-four years old. There was no indication that a drug problem or some other mental health issue contributed to the offenses. Nor was there any evidence that these offenses were part of a single spree which interrupted an otherwise law abiding life.

Regarding his argument about the alleged double penalization stemming from the fleeing conviction, the Commission has specifically stated that prior offenses used to increase the base level under U.S.S.G. § 2K2.1 also score criminal history points under U.S.S.G. § 4A1.1. See U.S.S.G. § 2K2.1 cmt. n.10. Defendant may have been under stress due to his divorce when he committed the fleeing offense, but I failed to see how

9

that mitigated his 80-90 mph flight from the officer. It was true that no one was hurt during the commission of that offense, but if someone had been injured, defendant would likely have faced more serious charges or a more severe sentence.[8] Perhaps defendant did not serve much of the 1994 larceny sentence, but I noted that if he did receive early parole it did not result in him changing his ways as he was convicted of another property crime in 2001 based on a 1998 incident.

Therefore, I found that category IV did not substantially over-state the seriousness of defendant's record or the likelihood that he would re-offend and denied the motion accordingly. I proceeded then to imposition of sentence under 18 U.S.C. § 3553(a).

## C.    Section 3553(a)

In imposing sentence, the court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed–
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3)    the kinds of sentences available;

---

[8]Defendant was sentenced to two years probation with 90 days jail as a condition on the fleeing offense. Thus, it scored 2 criminal history points under U.S.S.G. § 4A1.1(b).

10

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The statute directs the court, after considering these factors, to impose a sentence sufficient but not greater than necessary to satisfy the purposes of sentencing set forth in sub-section (a)(2).

### 1.     Nature of Offense

Defendant possessed a virtual arsenal in his home, consisting of six firearms, about 1000 rounds of ammunition, kevlar vests, two stun guns, two knives, and an ammunition box containing 40 mm military grenades.  It was not clear how he got all this, but a fair inference was that some of it at least was acquired or retained from his military service in the early 1990s.[9]  Two of the guns had obliterated serial numbers and another was traced to a theft from a Fond du Lac, Wisconsin gun store in March 1990, although there was no evidence that defendant removed the numbers or stole the gun, or was even aware of these characteristics.

It was also true that there was no evidence that defendant intended to cause any harm with the weapons, or transfer them to others.  He had no history of violence or other weapons offenses.  However, possessing all of these items in one location certainly posed a risk.  Many things could have happened to endanger others, such as theft, fire, explosion

---

[9]The government introduced evidence that defendant was trained to fire the 40 mm grenades while serving in the Marine Corp. and introduced a photo of defendant standing next to an amphibious assault vehicle mounted with the machine gun used to fire this ordnance.

11

or accidental discharges. Even if defendant could not be considered violent or dangerous, the offense was still serious and posed some risk to others.

### 2. Character of Defendant

There were significant positives in defendant's character. He graduated high school and had a solid employment history, working as a maintenance man for the past few years and before that as a driver, diesel mechanic and welder. He served in the Marines for four years and earned several commendations before he was dishonorably discharged following his larceny conviction. Defendant was divorced, but his ex-wife made positive comments about him and stated that he was a good father to their three children. I received several letters attesting to defendant's giving nature and dedication to his family. He had no substance abuse issues.

On the other hand, defendant had a substantial criminal record, as discussed above. Further, he did not accept responsibility for this crime, and even in talking to the PSR writer he tried to claim that he lived somewhere other than 517 Forest Avenue, Fond du Lac, Wisconsin, the house he owned from which the weapons were seized.[10] He would not talk about his relationship with Stoffel, and I suspected that her refusal to testify was part of a design to try to help him.

### 3. Purposes of Sentencing

I did not believe that defendant was dangerous or that the public needed to be protected from him engaging in violence. However, he posed some risk of recidivism given

---

[10]At trial, defendant attempted to argue that while he owned the home, the government did not prove that he actually lived there or that the weapons belonged to him, as opposed to Stoffel or Brady. The jury rejected his argument.

12

his record. I also had to impose a substantial period of confinement to promote respect for law and deter others. Federal law forbids felons from possessing firearms (and virtually anyone from possessing military grenades), and I had to make clear that possession of an arsenal such as defendant had would carry severe consequences. Finally, defendant appeared to have no correctional treatment needs and owed no restitution.

### 4. Consideration of Guidelines and Imposition of Sentence

The guidelines called for a term of 110-137 months. Under all of the circumstances, I found that a sentence somewhat below that range was sufficient to satisfy the purposes of sentencing.

First, the guidelines did not account for defendant's positive personal qualities: his solid work history, his dedication to his children, and his service to his country in the Marines. I acknowledged that defendant was dishonorably discharged from the military, but that was due to a larceny conviction and not any service-related misconduct. While serving, he received the rifle sharp shooter badge, the national defense service medal and the good conduct medal.

Defendant also helped his elderly father with maintenance tasks at his father's properties and businesses. Defendant's father considered him indispensable. His father also wrote that defendant helped others, as well, putting their needs before his own, as did several friends who wrote letters. He was by all accounts a very hard worker and selfless with his time. Defendant also had substantial family support, which would assist his re-integration into the community.

Clearly, defendant was also important to his children, and I received letters from his father, friends, former in-laws and the school principal in that regard. However, I could not

place too much weight on that factor, as I had to send him to prison for a substantial period and thus separate him from his children in order to satisfy the purposes of sentencing.

Second, it was undisputed that defendant did not intend to cause any harm with the weapons, which he stored in his home (as opposed to carrying on his person or in his car, as in many felon in possession cases). Many probably were souvenirs from the military. Further, defendant had no history of intentional violence or weapons offenses. Thus, I did not see him as a significant threat to the public. Nevertheless, the guidelines treated him as if he posed such a threat. Defendant was subjected to an enhanced base offense level under U.S.S.G. § 2K2.1(a)(3) based on his conviction of a "crime of violence." While the fleeing offense which formed the basis for that enhanced level technically qualified as a crime of violence under the broad wording of the applicable guideline, see United States v. Rosas, 410 F.3d 332 (7th Cir. 2005), it was not a situation in which defendant intentionally sought to cause or threatened to cause harm to another. Indeed, he had no such offenses on his record. Therefore, I found that, under the specifics of this case, the guidelines produced an imprisonment range somewhat greater than necessary to provide just punishment for the offense and to protect the public.

Finally, defendant performed well on bond in this case, with no violations. He also did well on supervision in the past, which showed that he could follow the rules in the community.

For these reasons, I concluded that a sentence below the guideline range would be sufficient. Defendant requested a sentence of 24 months, but I found that such a term would unduly depreciate the seriousness of the crime, fail to account for defendant's significant record and give insufficient consideration to the guidelines' recommendation.

14

Rather, under all of the circumstances, I found a sentence of 84 months sufficient but not greater than necessary to satisfy the purposes of sentencing.[11]  This sentence accounted for defendant's positive qualities and the overstatement of the danger defendant posed, while still providing for just punishment and adequate deterrence.  Because it was supported by the specific facts of the case and varied only slightly from the guidelines, the sentence did not create unwarranted disparity.[12]

Therefore, I committed defendant to the custody of the Bureau of Prisons for 84 months on count one and 84 months on counts three through seven, all to run concurrently.  I noted that the sentence would be the same even if all of the grenades referenced in counts three through seven had been charged in a single count.[13]  I further ordered defendant to serve a two year supervised release term on all counts to run concurrently, the conditions of which appear in the judgment.

_____

[11]At sentencing, the government stated that the guideline range of 110-137 months may be slightly excessive and suggested a term of about eight years.  For the reasons stated in the text, I agreed that the guidelines' recommendation was somewhat greater than necessary.

[12]While it is not necessary to explain non-guideline sentences in guideline terms, and I did not specifically do so here, this sentence was effectively 3 levels below the advisory guideline range.  This accounted for the 2 level overstatement in defendant's base offense level due to the fleeing case and afforded a 1 level reduction to account for defendant's positive personal qualities.

[13]As noted above, defendant argued that counts three through seven were multiplicitous.  I rejected that argument, following the other federal courts which have addressed the issue.  However, at least one court has held that although a defendant may be convicted of a separate count for each device, he may not be subjected to consecutive punishments for each count.  See United States v. Nichols, 731 F.2d 545, 547 (8th Cir. 1984).  By imposing the sentences concurrently, I avoided this issue.

15

### III. BAIL PENDING APPEAL

Finally, defendant announced his intention to appeal at sentencing and requested continuation of bail pending appeal. In order to obtain release pending appeal, the defendant must first demonstrate by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released. He must also show that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, an order for a new trial, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. § 3143(b).

I found, based on defendant's performance on bond during the pendency of the case and his family ties, that he was not likely to flee or pose a danger. I also concluded that the appeal was not for purposes of delay. However, defendant failed to demonstrate any substantial appellate issue likely to result in reversal of his convictions, or the reduction or vacating of his sentence.

Under § 3143(b), the burden of showing the merit of the appeal is on the defendant. United States v. Bilanzich, 771 F.2d 292, 298 (7th Cir. 1985). First, he must show that his appeal raises an issue that is substantial – a close question or one that could very well be decided the other way. United States v. Eaken, 995 F.2d 740, 741 (7th Cir. 1993). While the court need not conclude that it should have ruled the other way or will probably be reversed, United States v. Thompson, 787 F.2d 1084, 1085 (7th Cir. 1986), it must find that the issue is a toss-up or nearly so, United States v. Greenberg, 772 F.2d 340, 341 (7th Cir. 1985). Second, the defendant must show that the substantial issues will affect the validity

16

of his convictions. This means that the district court must determine whether, assuming that the question is decided in the defendant's favor, the appellate court is more likely than not to reverse the conviction or order a new trial on all counts for which imprisonment has been imposed. Bilanzich, 771 F.2d at 298.

In support of his request for bail, defendant presented three appellate issues: (1) the government's refusal to immunize Stoffel; (2) the sufficiency of the evidence at trial; and (3) the jury instructions on counts three through seven. I concluded that none of these issues were substantial or likely to result in reversal or an order for a new trial.

## A.    Immunization Issue

The applicable legal standard for immunization claims is well-settled, and the question in this case was not close. As I explained in my decision denying defendant's motion (R. 46 at 10-12), the United States Attorney has the authority to grant immunity to a witness; federal courts, by contrast, play only a ministerial role in ensuring that this power is properly exercised. United States v. Burke, 425 F.3d 400, 411 (7th Cir. 2005), cert. denied, 126 S. Ct. 2889 (2006) (citing United States v. George, 363 F.3d 666, 671-72 (7th Cir. 2004)). The prosecutor's broad discretion to refuse immunity is limited by the defendant's due process rights, but those rights are violated only when the prosecutor abuses his authority to immunize witnesses with the intention of distorting the fact-finding process. United States v. Schweihs, 971 F.2d 1302, 1315 (7th Cir. 1992). The defendant must make a substantial showing that the government intended to distort the fact-finding process before the court may act. United States v. Hooks, 848 F.2d 785, 799 & 802 (7th Cir. 1988).

In the present case, defendant failed to make the necessary showing. First, there

17

was no evidence that the government in any way threatened or intimidated Stoffel – or even spoke to her – prior to her invocation of the privilege. Thus, the government was not responsible for her decision. See Hooks, 848 F.2d at 801-02; see also United States v. Herrera-Medina, 853 F.2d 564, 568 (7th Cir. 1988) (suggesting that "sharp" tactics such as threatening a witness the government had no intention of prosecuting might require dismissal). Second, defendant failed to demonstrate that the government abused its discretion to grant immunity in order to distort the fact-finding process. As the Sevnth Circuit has noted:

> The government has broad discretion in its grants of immunity. It is the prerogative of the Attorney General and his designees to determine whether a grant of immunity is "in the public interest" under 18 U.S.C. § 6003. . . . Indeed, it is his prerogative to decide not to seek immunity simply because the government would gain nothing and the immunity would hinder future actions.

Hooks, 848 F.2d at 802.

I thus found it unlikely that the Seventh Circuit would, given the facts of the case and the applicable legal standard, reverse and grant a new trial on this issue.[14]

## B.    Sufficiency of the Evidence

I also concluded that defendant's challenge to the sufficiency of the evidence was not a substantial issue. When reviewing such challenges, the Seventh Circuit views the evidence in the light most favorable to the government and will reverse only if no rational

---

[14]My conclusions on this issue are set forth in more detail in the decision denying the motion to compel or dismiss. (R. 46 at 10-12.) I further note that defendant suffered no prejudice as a result of Stoffel not testifying. In deciding the suppression motion, I considered a written statement Stoffel prepared containing her version of events. I ended up crediting the officers' version of events over her's, but not because of Stoffel's failure to testify in person or based on any demeanor issues. Therefore, I fail to see how her failure to testify impacted upon the denial of the suppression motion.

18

trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The defendant's hurdle in making such a challenge has been described as "nearly insurmountable." Hale, 448 F.3d at 982.

In the present case, as I explained in detail in denying defendant's Fed. R. Crim. P. 29 motion for acquittal, the evidence was sufficient. (R. 76 at 2-9.) Defendant argued that the government presented insufficient evidence that he knowingly possessed the firearms and destructive devices alleged. However, the government demonstrated at trial that the firearms and devices were seized from 517 Forest Avenue, Fond du Lac, Wisconsin, on April 19, 2005, a home defendant owned since 1996 (as sole owner since 2003, when his wife was removed from the deed). Law enforcement seized several handguns and long guns, which formed the basis for count one, in addition to the explosive grenades charged in counts three through seven. Officers also seized a rather extraordinary amount of ammunition from the home. A reasonable jury could have inferred knowledge of the presence of the weapons (and the ammunition that went with them), given their numerosity and location throughout defendant's house.

Officers also seized from the house a letter from a nurse addressed to defendant dated April 6, 2005, pertaining to an apparent work-related injury defendant had suffered. A reasonable jury could have inferred from this evidence not only that defendant owned the home, but also that he lived there. The government further introduced a camera bag containing ammunition for, and located near, some of the charged guns in the main bedroom. The side pocket to the bag contained a photograph of a man the jury could reasonably have concluded was defendant. In the photograph, defendant was depicted standing on an amphibious assault vehicle mounted with the type of machine gun that fired

19

the grenades charged in counts three through seven. The government also presented evidence that defendant served in the Marines from 1990-1994, which included contact with the destructive devices and other forms of ammunition found in his house. The jury could have reasonably inferred knowing possession of these ordnance, which are not available to the general public, based on defendant's military service.

Finally, defendant was present when law enforcement searched his house on April 19, 2005, was served with a copy of the search warrant at the scene, and was arrested there after discovery of the weapons and ammunition. Based on all of this evidence, a reasonable jury could have found knowing possession beyond a reasonable doubt. Given the highly deferential standard on appeal, defendant is not likely to obtain reversal on this basis.

**C.    Jury Instructions on Counts Three Through Seven**

I also found that defendant's claims regarding the jury instructions on counts three through seven were not substantial. On appeal, the Seventh Circuit reviews the language of a district court's instructions with great deference, upholding instructions which are accurate statements of the law and which are supported by the record. United States v. Brack, 188 F.3d 748, 761 (7th Cir. 1999). The court will reverse only if the instructions, viewed as a whole, failed to treat the contested issues fairly and adequately. United States v. Gellene, 182 F.3d 578 , 589 (7th Cir. 1999).

To the extent that defendant plans to challenge my refusal to insert all of the definitions contained in § 5845 into the second element of the instruction on these counts, as he argued at trial, the argument plainly lacks merit. The court is to select only the definition that is appropriate based on the facts and the weapons charged. See Seventh

20

Circuit Federal Jury Instructions – Criminal 405 (1999) (committee comment).

To the extent that defendant plans to challenge the denial of his motion to acquit on counts three through seven based on the manner in which the third element – the registration element – was stated to the jury, the issue was also not substantial. As I explained at length in my decision denying that motion, the instruction was erroneous in a manner that benefitted defendant; he was not entitled to acquittal because the jury may have been instructed to impose an additional burden on the government not found in the charging statute.[15] (R. 76 at 9-14.)

Finally, I noted that even if the court of appeals reversed on counts three through seven, count one remained, and I certainly could – and would under the circumstances of this case – consider the grenade possession as relevant conduct and impose the same sentence. See United States v. Price, 418 F.3d 771, 788 (7th Cir. 2005) (holding that district court can consider acquitted conduct after Booker).

Thus, because defendant failed to establish any substantial appellate issue, I denied his motion for bail pending appeal. I did, however, allow him to voluntarily surrender to the institution designated by the Bureau of Prisons.

---

[15]This circuit's pattern instruction for § 5861(d) offenses states that the government must prove that the firearm was not registered in the National Firearms Registration and Transfer Record. Seventh Circuit Federal Jury Instructions – Criminal 405 (1999) (third element). Defendant argued that the government failed to prove that the grenades were not registered (to anyone), as opposed to not being registered to him. However, the statute plainly forbids any person to possess a firearm "not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5861(d) (emphasis added). Thus, the government was not required to prove non-registration to anyone, only non-registration to defendant, which it clearly did.

21

**IV. CONCLUSION**

For the reasons stated, I denied defendant's guideline objections and departure requests and imposed a sentence of 84 months imprisonment, which I found sufficient but not greater than necessary to satisfy the purposes of sentencing, followed by two years of supervised release.  I further denied defendant's motion for bail pending appeal, finding that he presented no substantial appellate issues justifying such relief.

Dated at Milwaukee, Wisconsin, this 5th day of January, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge